UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SPEARFISH EVANS-TONN DITCH COMPANY, A SOUTH DAKOTA NONPROFIT CORPORATION;<br><br>Plaintiff,<br><br>vs.<br><br>HORIZON INVESTMENTS, LLC, A SOUTH DAKOTA LIMITED LIABILITY COMPANY; AND CITY OF SPEARFISH, A SOUTH DAKOTA MUNICIPALITY;<br><br>Defendants. | 5:23-CV-05016-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

Plaintiff Spearfish Evans-Tonn Ditch Company ("Evans-Tonn"), a South Dakota nonprofit corporation, filed a Complaint containing five counts against Horizon Investments, LLC ("Horizon"), a South Dakota limited liability company, and the City of Spearfish (the "City"), a South Dakota municipality (collectively, "Defendants"). Doc. 1. The Complaint alleges generally that the Defendants violated the Clean Water Act of 1972, 33 U.S.C. § 1251 *et seq.* (the "CWA") by "their design, construction, and approval of a surface water runoff plan" directing surface water into the Evans-Tonn Ditch ("Ditch"), id. ¶ 22, and then enumerates claims of trespass, nuisance, negligence, aiding and abetting, and inverse condemnation under South Dakota law, id. ¶¶ 23–64. In addition to compensatory damages for the harms the runoff caused to the Ditch, Evans-Tonn seeks declaratory and injunctive relief and punitive damages. Id. at 8–11.

1

Defendants moved to dismiss the action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 14. Defendants argue that the Court lacks subject matter jurisdiction over the claims under 33 U.S.C. § 1365 and the Rooker-Feldman Doctrine, Doc. 15 at 9–13, or, alternatively, that Evans-Tonn has failed to state a claim upon which relief may be granted, id. at 5–9. On January 26, 2024, this Court held a hearing on the motion where argument largely centered on whether dismissal of the Complaint should be with or without prejudice. For the reasons discussed below, this Court dismisses the Complaint without prejudice.

## I.     Facts

In 2018, property developer Horizon submitted a development plan (the "Plan") to the City for approval to build the Wordeman Subdivision (the "Subdivision").[1] Doc. 1 ¶ 14. As part of the Plan, Horizon included a "Master Grading Plan." Id. ¶ 15. The Master Grading Plan, which must comply with the provisions of the Spearfish Stormwater Management Plan, proposed to direct surface water runoff from the Subdivision into the Ditch. Id. ¶¶ 16, 18. The Subdivision's engineer stamped the Master Grading Plan on March 12, 2018, and the City subsequently approved the Plan, including the Master Grading Plan. Id. ¶¶ 15, 17. In 2020, consistent with the approved Master Grading Plan, the Subdivision began directing its surface water runoff into the Ditch, triggering this action. Id. ¶ 19.

Evans-Tonn manages the Ditch, which has been in existence longer than South Dakota has been a state. Id. ¶ 8. The Ditch is used for irrigation and agriculture and connects with Spearfish Creek within the City. Id. ¶¶ 1, 12. Evans-Tonn contends the surface water runoff contains pollutants that harm the Ditch and make the water supply less suitable for its agricultural uses. Id.

---

[1] Maps displayed during the hearing reveal that the Subdivision is a residential development within the City with lots on either side of the Ditch, with homes built on some of the lots and with a road, including a bridge over the Ditch that preexisted the development.

¶ 20.   To protect the Ditch, Evans-Tonn initiated a state suit which was dismissed without prejudice.   Thereafter, Evans-Tonn filed this CWA citizen suit in March 2023, giving prior notice to the City of its potential claims on February 24, 2020, and again on August 17, 2021.  Id. ¶ 7. However, Evans-Tonn did not give notice of the potential claims underlying this action to the Administrator of the Environmental Protection Agency ("EPA") or to the South Dakota Department of Agriculture and Natural Resources ("DANR") as required under 33 U.S.C. § 1365(b).  See id.

## II.   Analysis

### A.  Subject Matter Jurisdiction Challenge and Requisite Pleading Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction can be either facial or factual in nature.  Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In both circumstances, the plaintiff has the burden of proving subject matter jurisdiction.  V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000).  Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (citation omitted).  "Courts must accept a plaintiff's factual allegations as true" and make all inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions."  Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).  "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right."  Stalley v. Cath. Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citation omitted).  When ruling on a Rule 12(b)(6) motion, a court generally

ignores materials outside the pleadings but may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (citation omitted); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988), abrogated on other grounds by O'Bryan v. Holy See, 556 F.3d 361 (6th Cir. 2009) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction[,] . . . the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (cleaned up). In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See id. at 729 n.6, 730.

Here, Defendants make both facial and factual challenges under Rule 12(b)(1) to subject matter jurisdiction, though it is somewhat difficult to parse those out. The facial challenges argue Evans-Tonn did not allege sufficient facts to plausibly support jurisdiction and that Evans-Tonn did not allege proper notice as required under the CWA. The factual challenges under Rule 12(b)(1) asserts Evans-Tonn's claims are barred by Rooker-Feldman and that Evans-Tonn in fact did not give proper notice required by the CWA.

"[F]ederal courts are courts of limited jurisdiction." <u>United States v. Afremov</u>, 611 F.3d 970, 975 (8th Cir. 2010).  This Court "has a special obligation to consider whether it has subject matter jurisdiction in every case." <u>Hart v. United States</u>, 630 F.3d 1085, 1089 (8th Cir. 2011). "This obligation includes the concomitant responsibility to consider sua sponte the Court's subject matter jurisdiction where the Court believes that jurisdiction may be lacking." <u>Id.</u> (cleaned up) (quoting <u>Clark v. Baka</u>, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam)).

Under 28 U.S.C. § 1331, federal district courts have jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution.  Merely citing to a federal statute, however, is not enough to confer federal jurisdiction; the plaintiff must allege sufficient facts to show a plausible right to jurisdiction.  <u>See</u> <u>Stalley</u>, 509 F.3d at 521 ("The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.").  Moreover, alleging federal question jurisdiction is not always enough to establish a court's power to hear a case because other bars to jurisdiction may exist.  <u>See, e.g.</u>, U.S. Const. amend. XI (creating sovereign immunity); <u>Rooker v. Fidelity Tr. Co.</u>, 263 U.S. 413 (1923) (describing a district court's lack of appellate jurisdiction over state court rulings); <u>D.C. Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983) (same).

In its complaint, a plaintiff must allege facts, and not just conclusions of law, showing jurisdiction exists.  <u>See</u> <u>Stalley</u>, 509 F.3d at 521.  "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Minnesota v. Am. Petrol. Inst.</u>, 63 F.4th 703, 709 (8th Cir. 2023); <u>see also</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Under the CWA, there is federal jurisdiction over citizen suits against a

5

person "who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C.A. § 1365.

On a motion to dismiss under Rule 12(b)(6), courts must accept the plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept the plaintiff's legal conclusions. <u>Retro Television</u>, 696 F.3d at 768–69. To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

When determining whether to grant a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." <u>Dittmer Props., L.P. v. FDIC</u>, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up); <u>see also</u> <u>Kushner v. Beverly Enters.</u>, 317 F.3d 820, 831 (8th Cir. 2003) (explaining that courts may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" (citation omitted)). "The consideration of judicially noticed facts, such as public court records, does not convert a motion to dismiss into one for summary judgment."

Waldner v. N. Am. Truck & Trailer, Inc., 277 F.R.D. 401, 406 (D.S.D. 2011) (citing State ex rel.

Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)).

### B. Clean Water Act Claim

#### 1. Insufficiency to Plead Federal Cause of Action Generally

Here, Evans-Tonn claims to rely on the CWA and federal question jurisdiction under §

1331 by asserting the action "involves, among other questions, the application of 33 U.S.C.A. §

1344 (1988 'Clean Water Act')." Doc. 1 ¶ 5. The Complaint alleges the Ditch is a "navigable

water" under § 1362(7) of the CWA because it connects to Spearfish Creek, which is also a

"navigable water." Doc. 1 ¶¶ 9, 12; see 33 U.S.C. § 1362(7) (defining "navigable waters" as "the

waters of the United States, including the territorial seas"); Sackett v. EPA, 143 S. Ct. 1322, 1336

(2023) (determining "the CWA's use of 'waters' encompasses only those relatively permanent,

standing or continuously flowing bodies of water forming geographical features that are described

in ordinary parlance as 'streams, oceans, rivers, and lakes.'" (cleaned up)). The Complaint also

alleges the Defendants "have violated state and federal Water Pollution Control standards and

CWA through their design, construction, and approval of a surface water runoff plan that allows

surface water from the Development to enter directly into the Ditch." Doc. 1 ¶ 22. The Complaint

also mentions the CWA various other times. See id. ¶¶ 30, 41, 50 (claiming the Defendants'

actions violated the CWA).

Yet, despite its repeated claims that the Defendants have violated CWA "standards,"

Evans-Tonn does not allege which provision of the CWA or which "effluent standard or limitation

under this chapter" the Defendants supposedly violated.[2] Evans-Tonn does not allege a single

---

[2] Section 1365 allows citizens to bring suit against one "who is alleged to be in violation of (A) an
effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a
State with respect to such a standard or limitation." The section further defines an "effluent

federal cause of action. Rather, the Complaint mentions the CWA several times in its "General Allegations," but pleads state law claims arising under state law, specifically Count One for Trespass, Count Two for Nuisance, Count Three for Negligence, Count Four for Aiding and Abetting, Count Five for Injunctive Relief under South Dakota statute, Count Six for Inverse Condemnation, and Count Seven for Punitive Damages. The resolution of the state law counts do not readily appear from the Complaint to depend on or involve the application of any provision of the CWA.

Evans-Tonn in its brief argues "the primary relief Evans-Tonn seeks is enjoinment of conduct that is contrary to and in violation of federal law, the Clean Water Act." Doc. 16 at 2. Yet, other than a passing reference to 33 U.S.C. § 1365(a), Evans-Tonn in its briefing only generally references three other sections of the CWA—33 U.S.C. § 1251, containing the congressional declaration of goals and policy; 33 U.S.C. § 1344, concerning permits for dredged or fill material; and 33 U.S.C. § 1362, defining certain terms—without explaining how the CWA was violated. Doc. 16 at 12. Nor did Evans-Tonn's counsel at the hearing identify any specific provision of the CWA that Defendants have violated. Evans-Tonn has not sought to amend its

standard or limitation" to include various permit and license requirements, discharge limits, performance standards, regulations, and other restrictions created in various portions of the Act. § 1365(f); see also §§ 1311(a) (prohibiting discharge of pollutants into navigable waters "[e]xcept as in compliance with" various provisions of the CWA), 1362(11) (defining an "effluent limitation" as "any restriction established by a State or the Administrator [of the EPA] on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance"), 1316 (national standards of performance for new sources), 1317 (effluent standards for toxic pollutants and pretreatment), 1322(p) (federal standards of performance for marine sanitation devices and vessels), 1328 (permits for certain discharge from aquaculture projects), 1341 (certification requirements), 1342 (national permit system for certain pollutant discharge), 1345(d) (regulations). Significantly, this section does not include §§ 1251, 1344, or 1362—the only statutory sections Evans-Tonn cites—as creating an "effluent standard or limitation" under the statutory authorization of citizen suits, § 1365.

Complaint, and its state-law claims for trespass, nuisance, negligence, aiding and abetting, or inverse condemnation do not implicate federal subject matter jurisdiction. Evans-Tonn's claim for injunctive relief under SDCL Ch. 21-8 in Count Five, or for punitive damages in Count Seven also do not depend on whether Defendants violated the CWA. Accordingly, Evans-Tonn has failed to plead, on the face of its Complaint, a claim under federal law triggering federal question jurisdiction.

### 2. Failure to Allege or Actually Exhaust Administrative Remedies

Even if Evans-Tonn's Complaint were well-pleaded, or could be amended to be so, this Court would have to dismiss because of Evans-Tonn's failure to exhaust administrative remedies under the CWA. Section 1365(a) grants district courts jurisdiction to enforce the CWA in citizen actions. But § 1365(b) states that "[n]o action may be commenced" under § 1365(a) against any person or agency in violation of an effluent standard or limitation "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator [of the EPA], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." 33 U.S.C. § 1365(b). The notice for violations of an effluent standard or limitation must include

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The party must also identify contact information for any counsel. 40 C.F.R. § 135.3(c).

9

Evans-Tonn's Complaint does not allege that it gave the requisite notice under § 1365(b). In briefing and at the hearing, Evans-Tonn acknowledged that it failed to give the mandated 60-day notice prior to commencing its suit.

The United States Court of Appeals for the Eighth Circuit has not yet addressed whether exhausting administrative remedies under § 1365(b) is a jurisdictional requirement or simply a procedural prerequisite to filing suit. The lone district court in the Eighth Circuit who has decided the issue determined exhausting administrative remedies under § 1365(b) is jurisdictional. See Hammes v. City of Davenport, 381 F. Supp. 3d 1038, 1042 (S.D. Iowa 2019). This approach is consistent with decisions in the Courts of Appeals for the Third, Sixth, Seventh, Ninth, and Tenth Circuits. See Pub. Int. Rsch Grp. v. Windall, 51 F.3d 1179, 1189 n.15 (3d Cir. 1995); Bd. of Trs. of Painesville Twp. v. City of Painesville, 200 F.3d 396, 400–01 (6th Cir. 1999); Atl. States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 820 (7th Cir. 1997); Nat'l Res. Def. Council v. Sw. Marine, Inc., 236 F.3d 985, 995 (9th Cir. 2000); Karr v. Hefner, 475 F.3d 1192, 1200 (10th Cir. 2007). However, three Courts of Appeals have decided exhaustion of administrative remedies under § 1365(b) is a mandatory but non-jurisdictional requirement. See Cebollero-Bertran v. P.R. Aqueduct and Sewer Auth., 4 F.4th 63, 72 (1st Cir. 2021); Lockett v. EPA, 319 F.3d 678, 682–83 (5th Cir. 2003); Am. Canoe Ass'n, Inc. v. City of Attalla, 363 F.3d 1085, 1088 (11th Cir. 2004).

Whether the failure to give notice is a jurisdictional bar matters at least in theory to whether a dismissal must be without prejudice. Under Rule 41(b) of the Federal Rules of Civil Procedure, dismissals for lack of jurisdiction should not operate as a judgment of dismissal with prejudice. Sorenson v. Sorenson, 64 F.4th 969, 973–74 (8th Cir. 2023) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice so that plaintiffs may reassert their claims in a competent court." (cleaned up)); County of Mille Lacs v. Benjamin, 361 F.3d 460, 464 (8th Cir.

2004) ("Dismissal for lack of jurisdiction is not an adjudication on the merits and thus such a dismissal should be without prejudice." (cleaned up)).  If a dismissal is not for want of jurisdiction, this Court could dismiss the case with prejudice.  After all, Rule 41(b) states, "Unless the dismissal order states otherwise, a dismissal under this [rule for involuntarily dismissal for failure to prosecute] and any dismissal not under this rule [for failure to prosecute]—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

Determining whether absence of notice is jurisdictional under § 1365(b) begins with the language of the statute.  The citizen-suit provision of the CWA explicitly indicates that "[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation . . . and to apply any appropriate civil penalties under section 1319(d) of this title."  33 U.S.C. § 1365(a).  Subsection (b) of that same section reads as follows:

> (b) Notice
> No action may be commenced—
>> (1) under subsection (a)(1) of this section—
>>> (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
>>> (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365.  The statute grants district court jurisdiction generally in § 1365(a), and then in § 1365(b) makes clear that no action can be commenced prior to sixty days after the plaintiff discharges the requirement to give notice.  Textually, § 1365(a) of the statute grants jurisdiction broadly, but § 1365(b) then creates a prerequisite of notice prior to when suit can be commenced.

A main reason that the majority of courts addressing the notice requirement interpret it as jurisdictional stems from the provision's similarity to the notice requirement in cases bringing citizen suits under the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972 ("RCRA") and a Supreme Court of the United States decision deeming the RCRA notice provision to be jurisdictional. See, e.g., Wash. Trout v. McCain Foods, 45 F.3d 1351, 1354 (9th Cir. 1995) ("We are guided by the Court's decision in Hallstrom[ v. Tillamook Cnty., 493 U.S. 20 (1989),] and find its [RCRA] holding applicable to the notice requirements under the Clean Water Act."). The citizen-suit provision of the RCRA states the following:

> (1) No action may be commenced under subsection (a)(1)(A) of this section –
>   (A) prior to 60 days after the plaintiff has given notice of the violation to –
>     (i)     the Administrator;
>     (ii)    the State in which the alleged violation occurs; and
>     (iii)   to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order,
>   except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of [42 U.S.C. §§ 6921 et seq.]; or
>   (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.

42 U.S.C. § 6972(b). The "no action may be commenced" language parallels § 1365(b) of the CWA. Thus, it is more likely that the Eighth Circuit would follow the Hallstrom analysis and in turn the majority of circuits to find the notice requirements of § 1365(b) of the CWA to create a jurisdictional prerequisite.

Evans-Tonn claims that it "provided notice to the City of its potential claim of damages first on February 24, 2020, and again on August 17, 2021." Doc. 1 ¶ 7. However, Evans-Tonn has unquestionably failed to give notice to the Administrator of the EPA or to the DANR, the South Dakota agency tasked with enforcement of the CWA, as required by the CWA. See 33 U.S.C. § 1365(b); Admin. R. S.D. 74:51; 40 C.F.R. Part 121.

Regardless of whether the notice provision of § 1365(b) is jurisdictional or not, this Court deems it proper to dismiss without prejudice. As one treatise puts it, "dismissals that do not reach the merits because of a lack of jurisdiction or failure of process, misjoinder, because the action was premature, or because it was brought by the wrong plaintiff must be considered to have been dismissed without prejudice." 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2373 (Supp. 2023). Even if this Court were to deem the notice requirement non-jurisdictional, then the action is premature, and a dismissal based on a lack of notice does not reach the merits.

Evans-Tonn in its brief requested that this Court stay these proceedings to allow Evans-Tonn time to give notice to the Administrator of the EPA and DANR and comply with the administrative remedies jurisdictionally required under § 1365(b).[3] Granting a stay contravenes and frustrates Congress's explicit statement that "[n]o action may be commenced" under § 1345 absent the passage of 60 days after the required notice is given. Besides, no stay is necessary here because Evans-Tonn appears not to face any statute of limitations issue. See Doc. 1 ¶ 19 (alleging "runoff began entering the Ditch" in 2020); United States v. Mlaskoch, Civil No. 10-2669, 2014 U.S. Dist. LEXIS 43314 (D. Minn. March 31, 2014) (citing United States v. Telluride Co., 146 F.3d 1241, 1244 (10th Cir. 1998); United States v. Banks, 115 F.3d 916, 918 (11th Cir. 1997); United States v. Rutherford Oil Corp., 756 F. Supp. 2d 782, 787 (S.D. Tex. 2010)) (noting the CWA does not have its own statute of limitations, so it is likely subject to the general federal statute of limitations, 28 U.S.C. § 2462); see also Sierra Club v. Otter Tail Power Co., 615 F.3d 1008, 1014 (8th Cir. 2010) (applying § 2462 to the Clean Air Act).

---

[3] Evans-Tonn acknowledged at the hearing that it did not give the requisite notice during the pendency of the motion to dismiss, awaiting this Court's decision to determine its next step.

## C. The <u>Rooker-Feldman</u> Doctrine

Defendants also argue the <u>Rooker-Feldman</u> doctrine deprives this Court of jurisdiction over Evans-Tonn's claims. The <u>Rooker-Feldman</u> doctrine takes its name from two decisions of the Supreme Court of the United States, <u>Rooker v. Fidelity Tr. Co.</u>, 263 U.S. 413 (1923), and <u>D.C. Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983). The doctrine holds that "only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state court judgment." <u>Friends of Lake View Sch. Dist. 25 v. Beebe</u>, 578 F.3d 753, 758 (8th Cir. 2009) (cleaned up). Both direct appeals and federal actions alleging claims that are "inextricably intertwined" with state court judgments constitute "appeals" for purposes of <u>Rooker-Feldman</u>.[4] <u>King v. City of Crestwood</u>, 899 F.3d 643, 647 (8th Cir. 2018) (citations omitted). Being a jurisdictional bar, dismissal under <u>Rooker-Feldman</u> should be without prejudice, <u>see</u> Fed. R. Civ. P. 41(b), though it affects what claims might be viable in the future.

To determine whether a federal action falls within the category of indirect "appeals" and violates <u>Rooker-Feldman</u>, the Eighth Circuit uses a four-part test: (1) the plaintiff lost in state court, (2) the plaintiff complains of injury arising from the state court judgment, (3) the action invites the district court to review and reject the state court ruling, and (4) the state court decision

---

[4] The claims are "inextricably intertwined" if the federal claim will only succeed by determining the state court wrongly decided the issue. <u>Prince v. Ark. Bd. of Examiners in Psychology</u>, 380 F.3d 337, 341 (8th Cir. 2004). This is similar to the inquiry of the third requirement of the <u>Exxon Mobil</u> test for <u>Rooker-Feldman</u>, which asks whether the plaintiff is requesting the federal district court undermine the state-court decision by reviewing and rejecting it, ostensibly for having been wrongly decided. <u>See</u> <u>Fochtman v. Hendren Plastics, Inc.</u>, 47 F.4th 638, 643 (8th Cir. 2022) (emphasizing that "federal district courts are courts of original jurisdiction" unable to "serv[e] as appellate courts to review state court judgments"). For these reasons, this Court does not itself use the "inextricably intertwined" language but relies on precedents using that language, acknowledging them as relevant and applicable to this analysis.

was rendered prior to the federal court action. <u>Fochtman v. Hendren Plastics, Inc.</u>, 47 F.4th 638, 643 (8th Cir. 2022) (explaining the circumstances in which the doctrine applies); <u>Healy v. Sup. Ct. of S.D.</u>, No. 23-CV-04118, 2023 U.S. Dist. LEXIS 224685, at *12 (D.S.D. Dec. 14, 2023) (numbering and applying the doctrine as a four-part test); <u>Strizheus v. City of Sioux Falls</u>, No. 23-CV-04028, 2023 U.S. Dist. LEXIS 53901, at *19 (D.S.D. Mar. 27, 2023) (same); <u>see also</u> <u>Exxon Mobil Corp. v. Saudi Basic Indus.</u>, 544 U.S. 280, 284 (2005).

Documents filed by Defendants without objection from Evans-Tonn show that Evans-Tonn sued the City of Spearfish for approving the Master Grading Plan for the Subdivision in South Dakota Circuit Court for the Fourth Judicial Circuit.  Doc. 21, Exhibit A.  Although paragraph 7 of the state court complaint mentions the CWA in passing, the claims are for declaratory relief, inverse condemnations, and trespass under state law. Doc. 21 at 1–9.  The City moved to dismiss. Doc. 21 at 10–23.  During the pendency of the case, the Supreme Court of South Dakota decided <u>Hostler v. Davison Cnty. Drainage Comm'n</u>, 974 N.W.2d 415 (S.D. 2022).  In <u>Hostler</u>, the Supreme Court of South Dakota reaffirmed that "[n]o right to appeal an administrative decision to circuit court exists unless the South Dakota Legislature enacts a statute creating that right." <u>Hostler</u>, 974 N.W.2d at 420 (quoting <u>Daily v. City of Sioux Falls</u>, 802 N.W.2d 905, 915 (S.D. 2011)).  The <u>Hostler</u> court further rejected the argument of the plaintiff, who was objecting to the defendant drainage commission's grant of a drainage permit, that the Declaratory Judgment Act conferred jurisdiction on the state circuit court.  <u>Id.</u> at 420–21.  Relying on <u>Hostler</u>, the state circuit judge dismissed Evans-Tonn's case against the City for lack of jurisdiction.  Doc. 15-1; <u>see</u> Doc. 15-2.  South Dakota's version of Fed. R. Civ. P. 41(b)—SDCL § 15-6-41(b)—similarly excepts "dismissal for lack of jurisdiction" from being considered as an adjudication on the merits.  Evans-Tonn did not appeal from the dismissal of its state court action.

15

Here, the first and fourth parts of the <u>Rooker-Feldman</u> test unquestionably are met.  Evans-Tonn did lose in state court; its claims were dismissed for lack of subject matter jurisdiction.  This federal action, filed on March 23, 2023, began after final judgment in the state court issued on August 30, 2022.  However, whether the second and third parts of the <u>Rooker-Feldman</u> doctrine are met is debatable.

The second part of the <u>Rooker-Feldman</u> test queries whether the plaintiff complains of injury arising from the state judgment.  Evans-Tonn's Complaint does not mention the state court ruling at all, let alone complain of injury because of it.  <u>See</u> Doc. 1.  Several of the claims are based on approval of the Master Grading Plan, and appealing the approval of the Master Grading Plan in federal court seems foreclosed under <u>Rooker-Feldman</u> analysis.  Both the state complaint and the one pending before this Court center on harm alleged due to runoff from the Subdivision into the Ditch.  But unlike the state case, Horizon is named as a defendant here and at least some of the claims seek damages as opposed to reversal of the City's approval of the Master Grading Plan.

The third element of the <u>Rooker-Feldman</u> doctrine—that the plaintiff invites the federal district court to review and reject the state court ruling—is difficult to apply here.  When a state court does not or cannot review a federal issue, the third requirement of <u>Rooker-Feldman</u> is not met, and the plaintiff may request separate review of the federal issue in federal court.  <u>See Simes v. Huckabee,</u> 354 F.3d 823, 830 (8th Cir. 2004) (holding "the <u>Rooker-Feldman</u> doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits").[5]  The Eighth Circuit explained that, absent such an exception to <u>Rooker-Feldman</u>, parties may be without a forum for their federal claims:

---

[5] The <u>Simes</u> exception to the <u>Rooker-Feldman</u> doctrine is narrow, and the Eighth Circuit has somewhat limited the applicability of the exception in subsequent cases.  In some cases, the Eighth Circuit has required the state court to have addressed the federal issue, or at least have summarily

16

[Parties] in state court would be placed in the following quandary: if they do not raise their federal claims in the state proceedings, they run the real risk of not being able to bring them subsequently in federal court. Feldman, 460 U.S. at 482 n.16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court."). But if they do raise federal claims in their state court defense, and the state court declines to address them, then . . . they are also barred from bringing those claims in federal court. No principle of federalism suggests or requires such a result.

Id. at 829. The "state court need only indicate it has considered, reached the merits, and rejected the federal claims" for Rooker-Feldman to apply; it "need not undertake extensive analysis of every federal claim before it, regardless of merit," for the claim to be barred. Id. at 830 (citation omitted).

In the present case, assuming the existence of a federal question not as yet stated in pleadings by Evans-Tonn, the state court did not—and indeed likely could not—adjudicate Evans-Tonn's federal CWA claim because federal courts arguably have exclusive jurisdiction over CWA actions.[6] Given the state court's potential jurisdictional inability to decide the CWA claim and its

---

dismissed it on its merits. See Lake View, 578 F.3d at 758 ("[T]he Rooker-Feldman doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits." (citation omitted)). In other cases, however, the Eighth Circuit has refused to apply the Simes exception even where the state court did not address the federal issues at all, citing instead to the plaintiff's *opportunity to have raised* the issue and received a judgment on the merits. See Prince, 380 F.3d at 341–42 (not applying the Simes exception to a case voluntarily dismissed with prejudice where the plaintiff "could have raised all of his constitutional challenges . . . in his state court case"); Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 755 (8th Cir. 2010) (not applying the Simes exception where "the state court discussed the merits of [plaintiff]'s case extensively and dismissed [the prior case] with prejudice" even though the determination of the state law issue was only obiter dicta). In this case, it does not matter how this Court applies the Simes exception because the federal court's exclusive jurisdiction over CWA claims would mean that the claim was not, and could not have been, decided on its merits, thereby falling within both the narrower and broader interpretations of Simes.

[6] The Eighth Circuit has not decided specifically whether federal courts have exclusive jurisdiction over CWA citizen suits, but it has found exclusive federal jurisdiction over such actions brought under the RCRA. See Blue Legs v. U.S. Bureau of Indian Affs., 867 F.2d 1094, 1098 (8th Cir. 1989) ("The RCRA places exclusive jurisdiction in federal courts for suits brought pursuant to section 6972(a)(1) [authorizing citizens suits] of the Resource Conservation and Recovery Act.");

dismissal for lack of jurisdiction, Evans-Tonn cannot be asking this Court to review and reject the state court's determination on a CWA issue because there was no state court determination on the issue at all. See Simes, 354 F.3d at 830 (explaining that a state court must decide the merits of a claim before Rooker-Feldman will bar its adjudication in federal court); see also Prince, 380 F.3d at 341–42 (barring a claim under Rooker-Feldman when the court did not decide the merits of a claim but the plaintiff had the opportunity to present the claim). After all, the state court dismissed for a lack of jurisdiction, claiming the action was an improper attempt to appeal the City's administrative permitting decision. See Alone v. C. Brunsch, Inc., 931 N.W.2d 707, 713 n.2 (S.D. 2019) ("Normally, Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1) dismissals are not. . . . If a court does not have jurisdiction, ipso facto, it cannot address the merits of a case." (quoting Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993))). Therefore, the Rooker-Feldman doctrine appears not to deprive this Court of subject matter jurisdiction over a CWA claim brought by Evans-Tonn, though Evans-Tonn's Complaint failed to state such a

---

see also Brod v. Omya, Inc., 653 F.3d 156, 167 (2d Cir. 2011) (noting the court has "viewed the CWA notice requirements as 'analogous' to the RCRA notice requirements" (citation omitted)); Tenn. Clean Water Network v. Tenn. Valley Auth., 905 F.3d 436, 445 (6th Cir. 2018) ("RCRA and the CWA should be read as complementary statutes, each addressed at regulating different potential environmental hazards."). Further, other Circuit Courts of Appeals have similarly suggested that jurisdiction over CWA and RCRA citizen suits is exclusively federal. See Chico Serv. Station, Inc. v. SOL P.R. Ltd., 633 F.3d 20, 31 (1st Cir. 2011) (explaining the RCRA "arguably locates exclusive jurisdiction over RCRA citizen suits in the federal courts"); Raritan Baykeeper v. NL Indus., 660 F.3d 686, 693 (3d Cir. 2011) ("doubting" the plaintiff could get state court review of its CWA and RCRA claims); Nat. Res. Def. Council v. United States EPA, 542 F.3d 1235, 1242 (9th Cir. 2008) ("[W]e hold that where a plaintiff alleges that the EPA has failed to perform a non-discretionary duty under the CWA and the plaintiff does not challenge the substance of any existing regulations, the district courts have exclusive jurisdiction under [33 U.S.C. § 1365]."). But cf. Davis v. Sun Oil Co., 148 F.3d 606, 612 (6th Cir. 1998) ("[W]e find that the citizen suit provision of the RCRA does not expressly provide for exclusive jurisdiction.").

claim.  The fact that Evans-Tonn is not completely barred from an action under Rooker-Feldman

provides additional reason for dismissal without prejudice.

**III.    Conclusion**

For the reasons described above, it is

ORDERED that Defendants' Motion to Dismiss, Doc. 14, is granted and that Plaintiff's

Complaint is dismissed without prejudice.

DATED this _6ᵗʰ_ day of February, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE